## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

JULIE VOEKS, Individually and on Behalf of All Others Similarly Situated, )
)
)
Plaintiff, )
)
vs. )
)
CAPITAL MANAGEMENT SERVICES LP, )
)
Defendant. )
)

Case No.: 18-cv-1782

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a personal credit card account.

5.     Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6.      Defendant Capital Management Services, LP, ("CMS") is a debt collection agency with its principal offices located at 698 ½ South Ogden Street, Buffalo, New York 14206.

7.      CMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      CMS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.      CMS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

<strong><u>FACTS</u></strong>

10.     On or about February 16, 2018, Barclays Bank Delaware ("Barclays") mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to Barclays Bank Delaware and associated with Plaintiff's "Barnes & Noble Booksellers" credit card account with an account number ending in 6016.  A copy of this account statement is attached to this complaint as Exhibit A.

11.     Upon information and belief, the debt referenced in Exhibit A is a personal consumer credit card account, used only for personal, family, and household purposes.

12.     Exhibit A states:



| Payment Due Date | March 13, 2018 |
|---|---|
| Minimum Payment Due | $658.54 |
| Previous Balance | $2,340.06 |
| Statement Balance | $2,410.14 |

**Barnes & Noble MasterCard® Statement**

Issued By: Barclays Bank Delaware
Primary Account Number Ending in: 6016
Statement Billing Period: 01/17/18 - 02/16/18

Page 1 of 4
Questions? Call 1-866-896-5547
BarclaycardUS.com

2

13.     Exhibit A states that, as of February 16, 2018, Plaintiff's account ending in 6016 had a "New Balance" of $2,410.14, with a "Payment Due Date" of March 13, 2018, and a "Minimum Payment Due" of $658.54.

14.     On or about March 4, 2018 CMS mailed Plaintiff a debt collection letter regarding an alleged debt, allegedly owed to "BARCLAYS BANK DELAWARE" and associated with Plaintiff's "Barnes & Noble" account.  A copy of this account statement is attached to this complaint as Exhibit B.

15.     Upon information and belief, the alleged debt referenced in Exhibit B is the same alleged debt referenced in Exhibit A.

16.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by CMS to attempt to collect alleged debts.

18.     Exhibit B was the first letter that CMS sent to Plaintiff with respect to Plaintiff's alleged "BARCLAYS BANK DELAWARE" debt.

19.     Exhibit B contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector send the consumer along with, or within five days of, their initial communications:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different than the current creditor.

Exhibit B.

20.     Exhibit B also states:

3

Original Creditor: BARCLAYS BANK DELAWARE
Current Creditor: BARCLAYS BANK DELAWARE
Description: Barnes & Noble
Account #: 8549
AMOUNT ENCLOSED: _____
Amount of Debt: $2410.14

Exhibit B.

21.    Exhibit B, mailed on March 4, 2018, just two weeks after Barclays mailed Exhibit A to Plaintiff, states the "Amount of Debt" but does not state that Plaintiff could return her account to a current status by making a minimum payment of $658.54 on or before March 13, 2018.

22.    Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

23.    The representation in Exhibit B that Plaintiff's account had a "Current Account Balance" of $2,410.14 is false, deceptive, misleading, and unconscionable.

24.    According to Exhibit A, as of March 4, 2018, when CMS mailed Exhibit B, Plaintiff's account had a "Minimum Payment Due" of $658.54, and a "Payment Due Date" of March 13, 2018. Exhibit A.

25.    The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "Amount of Debt" is $2410.14 without stating an amount "due" while Exhibit A seeks only a minimum payment of $658.54. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

26.    Moreover, although Exhibit A states that the minimum payment of $658.54 is not due until March 13, 2018, and that the "past due amount" is $565.06, Exhibit B states that CMS

4

was engaged by Barclays to resolve Plaintiff's "delinquent debt of $2410.14." *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector misleads consumer by stating a "current balance" without disclosing that a portion of that balance "might not yet be due, let alone overdue.").

27.     Additionally, Exhibit B contains account information that is confusing and misleading to the unsophisticated consumer.

28.     Exhibit B states that the "Current Creditor" of the debt is "BARCLAYS BANK DELAWARE," and that the "Original Creditor" of the debt is "BARCLAYS BANK DELAWARE."

29.     Exhibit B further states that the "Account #" is 8549, and that the "Reference#" of the account ends in 2507.

30.     According to Exhibit A, the account number associated with Plaintiff's Barnes & Noble credit card account ends in 6016, and does not contain 8549.

31.     Exhibit B is false, deceptive, misleading, and confusing in its identification of the debt and its creditor.

32.     The confusion engendered by the false account number stated in Exhibit B is compounded by the fact that Defendant is collecting on an account that is past due and Exhibit B states that Barclays is both the "Current Creditor" and the "Original Creditor." *See Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 n. 6 (9th Cir. 2014) (misidentification of an account number can be a material false statement); *Bentkowsky v. Benchmark Recovery Inc.*, 2014 U.S. Dist. LEXIS 191481, at *2 (N.D. Calif. Oct. 28, 2014) (collection letter that identified the current creditor as the original creditor "implies that the current creditor is someone different from the "Original Creditor," such as, perhaps, [the debt collector] itself.").

33.     The unsophisticated consumer is aware that "bad" consumer debts, including past-due credit card accounts, may be sold to third-party debt buyers.

34.     The unsophisticated consumer is also aware that third-party debt buyers generally assign purchased accounts new account numbers.

35.     The unsophisticated consumer, receiving Exhibit B, would be confused and misled as to whether CMS correctly identified the current creditor in its letter, which named Barclays as the original creditor and provided a creditor account number that was different from the number associated with her Barclays account.

36.     The unsophisticated consumer, receiving Exhibit B, would be confused and misled as to the character of the debt and whether it had been sold to a third-party debt buyer.

37.     The unsophisticated consumer, receiving Exhibit B, would be confused and misled as to the identity of the debt and its creditor.

38.     The unsophisticated consumer, receiving Exhibit A, would be confused and misled as to whether the Exhibit B was sent to collect on an account that was not hers.

39.     Plaintiff was confused by Exhibits A and B.

40.     The unsophisticated consumer would be confused by Exhibits A and B.

41.     Plaintiff had to spend time and money investigating Exhibits A and B.

### *The FDCPA*

42.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or

6

abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

43.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

44.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

45.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680

(Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

46. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS

8

139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

9

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

48.     15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

49.     15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

50.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51.     15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

52.     15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

53.     15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

54.     The debt collector must state the amount of the debt and the name of the creditor to whom the debt is owed in a non-confusing manner. *Janetos*, 825 F.3d at 323.

10

## The WCA

55.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

56.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

57.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

58.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

59.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

60.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

11

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

61.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

62.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

63.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

64.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

65.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

66.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

67.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68.    Prior to sending Exhibit B, CMS was aware that Barclays had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $658.54, and a "Payment Due Date" of March 13, 2018.

69.    CMS represented to Plaintiff that Plaintiff's Barclays account had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

70.    CMS misrepresented the amount, character, and legal status of the debt it was collecting.

71.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

72.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73.    CMS misrepresented Plaintiff's account number.

74.    The misrepresentation of Plaintiff's account number, coupled with the representation that Plaintiff's debt had been accelerated prior to the minimum payment due date, would confuse and mislead the unsophisticated consumer about whether the debt had been assigned to a third-party debt buyer.

75.    CMS misrepresented the amount, character, and legal status of the debt it was collecting.

76.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(2).

## COUNT III -- WCA

77.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78.     Prior to sending Exhibit B, CMS was aware that Barclays had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $658.54, and a "Payment Due Date" of March 13, 2018.

79.     CMS represented to Plaintiff that Plaintiff's Barclays account had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

80.     CMS misrepresented the amount, character, and legal status of the debt it was collecting.

81.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

82.     Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement by Barclays in the form of Exhibit A to the complaint in this action, (c) and subsequently were sent a letter in the form of Exhibit B to the complaint in this action, (d) where the letter in the form of Exhibit B was mailed prior to the "Minimum Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family or household

14

purposes, (f) and the letter in the form of Exhibit B was mailed between November 9, 2017 and November 9, 2018, inclusive, (f) and was not returned by the postal service.

83.　　The Class is so numerous that joinder is impracticable.　Upon information and belief, there are more than 50 members of the Class.

84.　　There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit B violates the FDCPA and/or the WCA.

85.　　Plaintiff's claims are typical of the claims of the Class members.　All are based on the same factual and legal theories.

86.　　Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

87.　　A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

88.　　Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)　　actual damages;

(b)　　statutory damages;

(c)　　attorneys' fees, litigation expenses and costs of suit; and

(d)　　such other or further relief as the Court deems proper.

Dated:　November 9, 2018

**ADEMI & O'REILLY, LLP**

By:    /s/ John D. Blythin
           John D. Blythin (SBN 1046105)
           Mark A. Eldridge (SBN 1089944)
           Jesse Fruchter (SBN 1097673)
           Ben J. Slatky (SBN 1106892)
           3620 East Layton Avenue
           Cudahy, WI 53110
           (414) 482-8000
           (414) 482-8001 (fax)
           jblythin@ademilaw.com
           meldridge@ademilaw.com
           jfruchter@ademilaw.com
           bslatky@ademilaw.com

16